IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Craig E. Scherber,                      Case No. 3:13CV530

        Plaintiff

      v.                                     **ORDER**

Online Auctions, LLC, et al.,

        Defendants

This is a dispute over the botched sale of a 1954 Kaiser Darrin automobile.

In September, 2010, plaintiff Craig Scherber agreed to buy the Darrin for $28,000 from defendant Online Auctions, LLC. In exchange, Online Auctions agreed to provide clear title within sixty days. But Online Auctions could not deliver clear title because neither it nor its proprietor, defendant Steven B. Hanson, ever had clear title. *See Scherber v. Online Auctions, LLC*, 2013 WL 4736738, *1 (N.D. Ohio).

Scherber demanded his money back, but Hanson balked, thereby precipitating this suit for violations of the Odometers Act, 49 U.S.C. § 32705, the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01, and various provisions of Ohio tort and contract law.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1332(a)(1).

This case has been on the cusp of settlement since February 19, 2015.

At a status conference that day, I learned that Hanson had offered to settle by paying Scherber $10,000 in monthly installments of $500. (Doc. 117 at 3). I also learned that, before the conference

began, Scherber had "counter-offered with a demand for payment . . . of $15,000[.]" (*Id.* at 3). During the conference, Hanson made clear that the $10,000 offer was still open. (*Id.* at 14–15) (Hanson explaining why he was offering $10,000, rather than $15,000, as he had offered earlier in the case).

After taking sworn testimony from Hanson concerning his financial circumstances, I urged Scherber's counsel to advise his client to accept Hanson's offer, as it was clear that Hanson could barely afford to pay $10,000, let alone all the damages that Scherber claimed. (*Id.* at 16).

I concluded the hearing by ordering "counsel for Scherber and Hanson (through successor counsel or *pro se*) to submit a status report re. Hanson offer to settle" on or before April 1. (Doc. 89). Thereafter, in June, 2015, I extended the deadline for filing a status report or dismissal entry to July 15. (Non-document entry of June 26, 2015).

In his status report of July 14, 2015, Scherber advised me that:

> [b]ased on Mr. Hanson's representations to the Court and all parties present at [the February, 2015, conference], Plaintiff ultimately agreed to the compromise proposed by Mr. Hanson in the amount of $10,000, payable in monthly installments of $500.00 per month via the payment of post-dated checks to be delivered by Mr. Hanson. However, despite said resolution, Mr. Hanson has failed to tender any payment or post-dated checks to Plaintiff. Mr. Hanson has failed to otherwise perform or to contact Plaintiff's counsel to resolve the matter. Plaintiff's acceptance of the compromise was communicated to Mr. Phillip D. Browarsky, Esq.*,* Mr. Hanson's counsel in the underlying state court action. Mr. Browarsky has also been made aware of Mr. Hanson's failure to perform pursuant to the agreement, but Plaintiff remains uncompensated.

(Doc. 91 at 1–2).[1]

---

[1] The state-court action to which Scherber referred was a suit Online Auctions filed against three parties asserting an interest in the Darrin: Alan Sobb, Arthur Sobb, and the Estate of Beatrice Sobb, the latter of whom, the state court ultimately found, was the car's rightful owner. (Doc. 31–1).

Given these representations, I allowed Scherber to seek summary judgment. (Doc. 94). He so moved on March 15, 2016 (Doc. 95), but Hanson sought multiple extensions before obtaining a new lawyer in July, 2016, and filing a counter-motion for summary judgment in August. (Doc.103).

As the summary-judgment briefing neared completion, Scherber filed a "Motion for Final Judgment and to Compel Settlement." (Doc. 109). The crux of the motion was that Hanson had twice agreed, under oath, to settle Scherber's claims against him: once, in April, 2014, during the underlying state-court action,[2] and again at the February, 2015, status conference before me.

When these matters became decisional, I held a status conference with the parties on December 1, 2016, to discuss the desirability of obtaining, so that I could make an informed decision on Scherber's motion for final judgment, the transcript of the February 19, 2015 hearing. The parties agreed to obtain the transcript and file revised briefs on the enforceability of the alleged settlement agreement. (Doc. 114).

Pending is Scherber's motion to compel enforcement of the settlement agreement (Doc. 118), which Hanson opposes. For the following reasons, I grant the motion.

## Discussion

"Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011).

---

[2] During Hanson's deposition in the state-court action, he agreed to settle his disputes with Scherber in both state and federal court by paying Scherber $20,000. (Doc. 109–1 at 6–9). Scherber asserts that Hanson paid him $5,000 but welched on the remaining $15,000. (Doc. 118 at 2). Oddly enough, Hanson now questions whether that payment was in furtherance of his first settlement offer. (Doc. 119 at 3–4). These newfound doubts are baseless: Hanson previously represented that the $5,000 was "payment toward a final settlement" with Scherber (Doc. 86 at 1).

Ohio law, which both sides agree is controlling, defines a settlement agreement as "a contract designed to terminate a claim by preventing or ending litigation[.]" *Cont'l W. Condo. Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St. 3d 501, 502 (1996). "The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance thereof." *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) (internal quotation marks and citation omitted).

I have "broad, inherent authority and equitable power . . . to enforce an agreement in settlement of litigation pending before [me.]" *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000).

"Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Tocci*, *supra*, 967 F. Supp. 2d at 1195. But if there is no dispute as to the existence of a settlement or its terms, I may enforce the settlement summarily. *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973).

### A. Acceptance

There is no dispute that, during the February 19, 2015 status conference, Hanson offered to settle Scherber's claims by paying Scherber $10,000. (Doc. 117 at 3, 14–15).

Hanson is correct that Scherber made a counter-offer, the effect of which was to destroy the original offer. *Mid-States Dev. Co. v. Emery Air Freight Corp.*, 1988 WL 70810, *9 (Ohio App.). But he ignores the fact that he subsequently renewed the $10,000 offer. (Doc. 117 at 14–15). Everyone present at the conference, moreover – Scherber's lawyer, Hanson, and I – understood that

offer to be on the table, and that is why I ordered the parties to "submit a status report re. Hanson offer to settle[.]" (Doc. 89).

Accordingly, there is no uncertainty as to the amount of the settlement agreement.

Likewise, there is no question that Scherber accepted the settlement offer after the February, 2015 status conference.

As Scherber's status report of July 14, 2015, explained, "[p]laintiff ultimately agreed to the compromise proposed by Mr. Hanson in the amount of $10,000[.]" (Doc. 91 at 2). This unambiguous representation by Scherber's counsel, on Scherber's behalf, was a judicial admission that bound Scherber to accept Hanson's offer. *E.g. Kay v. Minacs Grp. (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) ("Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them."). As such, it suffices to prove that Scherber agreed to settle the case for $10,000.[3]

The only debatable question is whether Scherber adequately communicated his acceptance to Hanson.

"[T]here is no binding contract unless an acceptance of an offer made by one of the parties is received by the offeror." 17 Ohio Jur. 3d Contracts § 27. "To constitute an acceptance of an offer to enter a bilateral contract there must be an expression of the intention by word, sign, writing or act, communicated or delivered to the person making the offer or his agent." *Toro v. Geyer*, 117 N.E.2d 620, 621 (Ohio App. 1951).

---

[3] Hanson seems to argue that his settlement offer expired on April 1, 2015 (Doc. 119 at 2–3), but there is no basis in the record for that contention. That date was simply the deadline for the parties to file status reports about settlement efforts, and I extended that deadline without objection from either party. (Non-document entry of June 26, 2015). Hanson himself never put a time limit on his offer, and he offers no evidence to show otherwise.

Here, Scherber communicated his acceptance to attorney Phillip Browarsky. (Doc. 91 at 2).

Browarsky represented Hanson and Online Auctions in the state-court action, but he has never filed an appearance on Hanson's behalf in this case. Nevertheless, I conclude that conveying Scherber's acceptance to Browarsky was adequate under the circumstances.

First, it is sufficient under Ohio law for an offeree to communicate his acceptance to the offeror's agent. *Toro*, *supra*, 117 N.E.2d at 621. "It is axiomatic," moreover, that an attorney acts as an agent for his client[.]" *Wolff v. Flanagan*, 1980 WL 355208, *2 (Ohio App.). Accordingly, Hanson's emphasis on the fact that "notice of the acceptance of the offer was [not] directly conveyed to [him]" (Doc. 119 at 3) is not dispositive.[4]

Second, while Browarsky did not appear in this case, he did represent Hanson and Online Auctions in the state-court action. That litigation substantially overlapped with the merits of this case. It concerned Online Auction's claim that the Sobbs committed "fraud and tortious[ly] interfere[d] with [its] contract rights with respect to" the Kaiser Darrin. (Doc. 31–1 at 3). Notably, the Sobbs filed a third-party complaint against Scherber, alleging that, in purchasing the car from Online Auctions, he had converted the Darrin and violated the Ohio Certificate of Title Act. (*Id.*). Furthermore, the same attorney who represents Scherber in this case represented him in the state-court action.

Third, Hanson has never alleged – let alone offered evidence or made a proffer – that he did not know Scherber accepted his offer. He contends only that there is no evidence that attorney Browarsky communicated the acceptance to him directly.

---

[4] In any event, this assertion is not accurate: Scherber served Hanson with a copy of the status report reflecting his acceptance of the settlement offer. (Doc. 91 at 3).

Given the scope of Browarsky's representation of Hanson in the state-court action, and the overlap between that case and the present one, it was reasonable and permissible for Scherber's counsel to convey his client's acceptance of the settlement offer to Browarsky on the assumption that Browarsky would relay that acceptance to Hanson.

Accordingly, I find that the parties entered into a binding settlement agreement calling for Hanson to pay Scherber $10,000 in the form of twenty monthly installments of $500.

### B. Waiver

Hanson also contends that Scherber waived his right to enforce the settlement when he elected, in March, 2016, to pursue summary judgment.

This argument has no merit.

Under Ohio law, a party to a settlement agreement does not waive his right to enforce the agreement by pursuing judicial remedies that are open to him. *Judd v. Queen City Metro*, 31 Ohio App. 3d 88, 91 (1986) ("We find no inconsistency in the attempt by a victorious litigant to recover amounts due him under his judgment when the victor also has a settlement agreement that the defendant has brought into jeopardy by repudiating it and refusing to pay."). Indeed, "if one party breaches the [settlement] agreement, the other party may seek to enforce the agreement or pursue the remedy sought in the original action." *Grove City v. Weethee*, 1989 WL 68280, *2 (Ohio App.).

Only an intentional relinquishment of the right to enforce the settlement agreement constitutes a waiver. *Judd*, *supra*, 31 Ohio App. 3d at 91.

Nothing in the record indicates Scherber intended to relinquish his right to enforce the settlement. Rather, in the face of Hanson's refusal to fulfill his obligations under the settlement agreement, Scherber permissibly moved for "the remedy sought in [his] original [complaint]." *Grove*

7

*City*, *supra*, 1989 WL 68280, *2. Nothing in that maneuver establishes that Scherber no longer considered himself entitled to collect $10,000 from Hanson.

### C. Attorney Fees

Finally, Scherber contends that he is entitled to attorney fees because Hanson breached the settlement agreement in bad faith.

"As a general rule, attorney fees (for either party) are not recoverable as damages in contract actions, unless there has been a substantial showing of bad faith or wrongful motives." *First Federal Savings & Loan Assoc. of Toledo v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 147 (1983).

"The Supreme Court of Ohio has defined 'bad faith' as 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Murray & Murray, Co., L.P.A. v. Brugger*, 2005-Ohio-5262, ¶28 (Ohio App.).

Here, the record is insufficient to justify an award of attorney fees. Indeed, there is no evidence, one way or the other – beyond the bare fact of Hanson's non-performance – as to why Hanson failed to pay Scherber the settlement amount.

Although Scherber emphasizes that Hanson opposed his summary-judgment motion, which caused Scherber to incur additional legal expenses, this is not indicative of "conscious wrongdoing" or Hanson's "dishonest purpose." Hanson was liable under the settlement agreement, after all, only for $10,000, so it was rational for him to dispute the motion for summary judgment – and the accompanying request for damages in excess of $75,000. It was Scherber's choice, moreover, to seek summary judgment, and I do not think it proper to, in effect, penalize Scherber for opposing that request.

Finally, Scherber has not introduced any evidence – hours expended, the necessity thereof, a proposed lodestar rate, etc. – to support his unexplained request for $7,000 in attorney fees. For this reason as well, I conclude he is not entitled to a fee award.

## Conclusion

Because the parties entered a binding settlement agreement, and because it undisputed Hanson has not fulfilled his obligations under that agreement, I will grant the motion to enforce the settlement agreement. Judgment will enter in Scherber's favor in the amount of $10,000, with interest accruing as of July 14, 2015, the date that Scherber filed his status report reflecting his acceptance of the settlement offer.

It is, therefore

ORDERED THAT:

1. Scherber's motion to compel settlement (Doc. 118) be, and the same hereby is, granted;

2. Judgment be, and the same hereby is, entered in favor of Scherber and against Hanson in the amount of $10,000, with interest as of July 14, 2015; and

3. Scherber's request for an award of attorney fees be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge